AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. **23mj2141**
Red Samsung Android Cell Phone )
Seized as FP&F No. 202356550002760**2** )
("Target Device **2** ) )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A·**2** incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U. S. C. § 1324 | Title 8, U.S.C. § 1324(a)(1)(A)(ii)Transportation of Illegal Aliens & (a)(2)(B)(iii) Bringing In Illegal Aliens Without Presentation |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Shawna M. Wilson, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Shawna M. Wilson, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date:    06/14/2023

_____
*Judge's signature*

City and state:  San Diego, California

HON. David D. Leshner U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Shawna M. Wilson, being duly sworn, hereby state as follows:

## INTRODUCTION

1.    I submit this affidavit in support of an application for warrants to search the following electronic devices:

> Light Green Cricket Android Cell Phone
> Seized as FP&F No. 2023565500027601
> (**"Target Device 1"**)
>
> Red Samsung Android Cell Phone
> Seized as FP&F No. 2023565500027602
> (**"Target Device 2"**)

the **"Target Devices"**, as further described in Attachments A-1 and A-2 and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.    The requested warrants related to the investigation and prosecution of Alex RUIZ and Jose Manuel GOMEZ Perez for bringing in and transporting/moving illegal aliens within the United States. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents.  This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all my knowledge of the investigation into this matter.   Dates and times are approximate.

# AFFIDAVIT

I, Shawna M. Wilson, being duly sworn, hereby state as follows:

## INTRODUCTION

1.    I submit this affidavit in support of an application for warrants to search the following electronic devices:

> Light Green Cricket Android Cell Phone
> Seized as FP&F No. 2023565500027601
> (**"Target Device 1"**)

> Red Samsung Android Cell Phone
> Seized as FP&F No. 2023565500027602
> (**"Target Device 2"**)

the **"Target Devices"**, as further described in Attachments A-1 and A-2 and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.    The requested warrants related to the investigation and prosecution of Alex RUIZ and Jose Manuel GOMEZ Perez for bringing in and transporting/moving illegal aliens within the United States. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents.  This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all my knowledge of the investigation into this matter.   Dates and times are approximate.

## TRAINING AND EXPERIENCE

4.     I have been employed by the USBP since 2019 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for four years.  I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants.  I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5.     My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6.     During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work

in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8.    The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9.      Based upon my training, experience, and consultations with law enforcement officers experienced in human smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10.     This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11.     On June 10, 2023, Border Patrol Agents A. Guzman and T. Mallon were performing their assigned duties in the Campo Border Patrol Station's area of responsibility.   Agent Guzman was wearing his issued body armor with patches and insignias visible.   Agent Mallon was wearing his full rough duty uniform with patches and insignias visible.   At approximately 11:20 AM, Border Patrol Agent J. Ordonez was traveling east on State Route 94 (SR-94) near Highway 188 behind a white Honda Civic. Agent Ordonez requested record checks on the Honda, checks showed the Honda was out of La Mesa, CA, with release of reliability and no prior travel history out of Campo, CA.

12.     Agent Ordonez noticed the Honda was braking constantly and reduced his speed lower than the posted speed limit.   Agent Ordonez noticed both the driver and passenger kept looking at Agent Ordonez through the rearview mirror.   Agent Ordonez observed the Honda riding low and swerving in and out of lanes.   When Agent Ordonez noticed the Honda slow down to approximately 15 miles per hour on a 50 miles per hour speed limit area, he asked for assistance on a vehicle stop.

13.     Agent Mallon responded to assist and initiated a vehicle stop at approximately 11:40 AM.   The Honda failed to yield and kept driving east on SR-94.   Border Patrol Agent B. Garcia, who was standing by with a vehicle immobilization device (VID), deployed it, but was unsuccessful.   At approximately 11:41 AM, Supervisory Border Patrol Agent J. Decker told agents to disengage from pursuing the Honda, to which they did.   Agent Decker then told Agent Guzman, who was driving an unmarked Border Patrol vehicle, to keep driving east on SR-94 and follow the Honda from a distance.   At approximately 11:42 AM, Agent Guzman observed four individuals approximately 600 yards east of Shockey Truck Trail running south away from SR-94.   Agent Guzman also noticed the Honda driving away from that location at a very slow rate of speed and continue east on SR-94.   At

5

approximately 11:53 AM, Border Patrol Agent A. Dalton notified agents that he successfully deployed his VID on the Honda. The Honda came to a complete stop south of Mountain Top Market. This area is approximately 27 miles east of the Tecate, California Port of Entry and approximately 5 miles north of the United States/Mexico International Boundary.

14.     Agent Guzman approached the Honda and took the driver, later identified as the defendant, Alex RUIZ, out of the Honda. At approximately 11:56 AM, Agent Guzman placed RUIZ under arrest. At the same time, Agent Mallon was searching for the four individuals, when he discovered shoe prints. Agent Mallon followed the shoe prints, until encountering four individuals laying down under a big tree, attempting to conceal themselves. This area is approximately 22 miles east of the Tecate, California Port of Entry and Approximately 5 miles north of the United States/Mexico International Boundary. Agent Mallon conducted an immigration inspection on the four individuals, later identified as defendant, Jose Manuel GOMEZ Perez, and material witnesses, Pedro ALCANTAR-Padilla, Roberto GARCIA Martinez and Miguel MURILLO-Ramos. All four individuals stated that they are citizens of Mexico without any immigration documents allowing them to enter or remain in the United States legally. At approximately 12:20 PM, Agent Mallon placed GOMEZ, ALCANTAR, GARCIA and MURILLO under arrest.

15.     At the time of arrest, a light green Cricket Android cell phone **(Target Device 1)** was found on the defendant Alex RUIZ' person. A Red Samsung Android cell phone **(Target Device 2)** was found on the defendant Jose Manuel GOMEZ Perez. RUIZ claimed that **Target Device 1** was his, and GOMEZ claimed that **Target Device 2** was his. These devices were subsequently seized.

16.     Material witnesses ALCANTAR, GARCIA and MURILLO stated that they are citizens of Mexico without any immigration documents allowing them to enter or remain in the United States legally. GARCIA made smuggling arrangements and was going to pay $9,000 USD. ALCANTAR stated that a white or gray vehicle pulled over

6

and signaled them to get in.  ALCANTAR stated that he entered through the rear passenger side and crouched down.  ALCANTAR described the driver as a light skinned man who spoke English.  ALCANTAR and GARCIA stated that at one point the vehicle stopped, and they all got out.  GARCIA stated that one of the three individuals that crossed with him was always in the front and would guide them through the high brush.  GARCIA stated that his individual would often step aside and talk on the phone and received the information regarding the smuggling vehicle.

17.    GARCIA stated that a gray vehicle arrived, and the driver yelled "vamonos," which means let's go in Spanish.  GARCIA stated that he sat on the rear seat behind the front passenger.  GARCIA stated that the driver told them to hide.  GARCIA described the driver as a heavy-set male with short black hair.  MURILLO stated that one of the individuals would always be in the front and would step out when the rest of the group was sleeping.  MURILLO stated that he sat in the middle rear seat and the driver told them to hide.  MURILLO stated the driver told them to get out of the vehicle.  The material witnesses were shown a photographic line-up and MURILLO was able to identify RUIZ as the driver of the vehicle.  GARCIA and MURILLO were able to identify the defendant GOMEZ as the foot guide in today's event.

18.    Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that the defendants were using the **Target Devices** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the defendants, attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer

7

than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on **May 10, 2023, through June 10, 2023**.

## METHODOLOGY

19.     It is not possible to determine, merely by knowing the cellular telephones' make, model and serial number, the nature and types of services to which the devices are subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device.

20.     Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the devices may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the devices manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21.     Following the issuance of these warrants, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephones and its memory cards will

8

employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

22.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days from the date this warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

23.     Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

**CONCLUSION**

24.     Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

25.     Because the **Target Devices** were seized at the time of Alex RUIZ and Jose Manuel GOMEZ Perez' arrest; and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **May 10, 2023, through June 10, 2023**.

26.     Accordingly, I request that the Court issue warrants authorizing law enforcement to search the items described in Attachments A-1 and A-2 and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Shawna M. Wilson
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 14th day of June 2023.

_____
Hon. David D. Leshner
United States Magistrate Judge

10

1

## ATTACHMENT A-2

2

PROPERTY TO BE SEARCHED

3    The following property is to be searched:

4    Red Samsung Android Cell Phone
     Seized as FP&F No. 2023565500027602
5    (**"Target Device 2"**)

6

     Target Device is currently in the custody of the Department of Homeland Security,
7    Customs and Border Protection, United States Border Patrol, San Diego Sector.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

## ATTACHMENT B

### ITEM TO BE SEIZED

Authorization to search the cellular telephones described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below.  The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrants.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **May 10, 2023, through June 10, 2023**:

a.   tending to indicate efforts to smuggle aliens from Mexico into the United States; and transport aliens inside the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.   tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.   tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which is evidence of violations of Title 8, United States Code, Section 1324.